Elouise Pepion **COBELL,
et al., Plaintiffs,**

v.

**Gale A. NORTON, Secretary of the Interior, et al., Defendants.**

**No. CIV.A.96–1285–RCL.**

United States District Court,
. District of Columbia.

Sept. 30, 2002.

Keith M. Harper, Lorna K. Babby, Dennis Marc Gingold, Elliot H. Levitas, Washington, DC, for Plaintiffs.

Robert D. Luskin, Patton Boggs LLP, Tom C. Clark, Brian L. Ferrell, Andrew M. Eschen, U.S. Department of Justice Land & Natural Resources Division, Charles Walter Findlay, III, Sarah D. Himmelhoch, U.S. Department of Justice Land & Natural Resources Division, Sandra Marguerite Schraibman, U.S. Department of Justice Federal Programs Branch, Edith R. Blackwell, Washington, DC, John Charles Cruden, U.S. Department of Justice, U.S. Department of Justice Land & Natural Resources Division, Annandale, VA, Lewis Steven Wiener, Sutherland, Asbill & Brennan, L.L.P., Mark E. Nagle, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Attorney's Office, J. Christopher Kohn, U.S. Department of Justice Commercial Litigation Branch, Jo-Ann Shyloski, Barry Weiner, U.S. Department of Justice, Environment and Natural Resources, Henry A. Azar, Jr., U.S. Department of Justice, Federal Programs Branch, Washington, DC, Terry M. Petrie, U.S. Department of Justice Environment and Natural Resources, Denver, CO, Seth Brandon Shapiro, U.S. Department of Justice Civil Division, Jonathan Brien New, U.S. Department of Justice Civil Division, Federal Programs Branch, Jennifer R. Rivera, U.S. Department of Justice Civil Division, Sandra Peavler Spooner, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, U.S. Department of Justice Commercial Litigation Branch, John Stemplewicz, Civil Division, Amalia D. Kessler, U.S. Department of Justice Commercial Litigation Branch, John S. Most, U.S. Department of Justice Trial Attorney, General Litigation Secti Environment and Natural Resources, Phillip Martin Seligman, U.S. Department of Justice Civil Division, Terry M. Petrie, John J. Siemietkowski, U.S. Department of Justice Commercial Litigation Branch, Tracey Lyle Hilmer, U.S. Department of Justice Civil Division, Dodge Wells, U.S. Department of Justice, Elizabeth Wallace Fleming, Preston, Gates, Ellis & Rouvelas Meeds, Washington, DC, for Defendants.

Lawrence H. Wechsler, Janis, Schuelke & Wechsler, Donald Michael Barnes, Porter, Wright, Morris & Arthur, Daid Booth

Beers, Shea & Gardner, Washington, DC, William Aaron Dobrovir, Warrenton, VA, Pamela J. Marple, Manatt, Phelps & Phillips, Washington, DC, Timothy Patrick Garren, U.S. Department of JusticeCivil Rights Division, Erik Lloyd Kitchen, Steptoe & Johnson, L.L.P., Martha Purcell Rogers, Ober, Kaler, Grimes & Shriver, Michael R. Bromwich, Fried, Frank, Harris, Shriver & Jacobson, Amy Berman Jackson, Trout & Richards, P.L.L.C., Roger Eric Zuckerman, Zuckerman Spaeder, LLP, Kathleen Elizabeth Voelker, Stephen M. Byers, Crowell & Moring, L.L.P., Leslie B. Kiernan, Zuckerman Spaeder, LLP, L. Barrett Boss, Asbill, Moffitt & Boss, Chartered, Sydney Jean Hoffmann, John Francis Hundley, The Law Offices of Plato Cacheris, Barbara Ann Van Gelder, Wiley Rein & Fielding, LLP, William Holt Briggs, Jr., Laura C. Zimmitti, Ross, Dixon & Bell, LLP, Thomas Edward Wilson, Berliner, Corcoran & Rowe, L.L.P., Mary Lou Soller, Miller & Chevalier, Chartered, Jeffrey David Robinson, Malissa Heitmann McNiven, Dwight Phillip Bostwick, Baach, Robinson & Lewis, Washington, DC, Larry Allen Nathans, Robert W. Biddle, Bennett & Nathans, L.L.P., Baltimore, MD, John Kenneth Zwerling, Lisa Bondareff Kemler, Zwerling & Kemler, P.C., Alexandria, VA, Russell David Duncan, Lisa Ann Freiman Fishberg, Coburn & Schertler, E. Lawrence Barcella, Jr., Paul, Hastings, Janofsky & Walker, L.L.P., David Sidney Krakoff, Alessio D. Evangelista, Beveridge & Diamond, P.C., Michael D. Goodstein, Resolution Law Group, PC, Washington, DC, Bradley Stuart Lui, Morrison & Foerster, LLP, McLean, VA, Stanley M. Brand, Andrew Dewald Herman, Brand &

Frulla, P.C., Marshall L. Matz, Olsson, Frank & Weeda, P.C., Jefferson McClure Gray, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, Emily M. Yinger, Hogan & Hartson, McLean, VA, William Leonard Gardner, Brian Michael Privor, Morgan, Lewis & Bockius, L.L.P., Alan Lee Balaran, Richard Lee Cys, Davis Wright Tremaine, Jonathan K. Tycko, Tycko Zavareei, LLP, Washington, DC, for Non Parties.

Christopher B. Mead, London & Mead, Washington, DC, Nathaniel Davis Owens, Sr., Anniston, AL, Jill Elise Grant, Washington, DC, Neil James Ruther, Towson, MD, for Movants.

Albert Lee Bynum, Gadsden, AL, Pro se.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on four of defendants' motions for adjustment or reconsideration of requests by the Court Monitor (now Special Master–Monitor) for compensation.[1] Because the motions and supporting memoranda are nearly identical in their factual statements and arguments, the Court will address all four in this Memorandum and Order.

Defendants provide three grounds for their requests for adjustment or reconsideration:

(1) Defendants were not provided with an opportunity to review and object to the Court Monitor's compensation requests prior to the issuance of the Court's orders for payment;

---

1. Interior Defendants' Motion for Reconsideration of the May 31, 2002 Order to Pay the Court Monitor the Sum of $54,307.34 [1340], filed on June 14, 2002; Interior Defendants' Motion for Adjustment of the June 2002 Compensation Request of the Court Monitor [1387], filed on July 17, 2002; Interior Defen-

dants' Motion for Adjustment of the July 2002 Compensation Request of the Court Monitor [1414], filed on August 6, 2002; and Interior Defendants' Motion for Adjustment of the Court Monitor's August 2002 Compensation Request [1540], filed on September 24, 2002.

(2) The compensation requests were not reasonable or proper because they failed to provide sufficiently detailed information about the work performed by the Court Monitor; and

(3) The compensation requests were not reasonable or proper because the Court Monitor included charges for activities and expenses that were beyond the scope of his appointment order and beyond the jurisdiction of this Court.

The Court will examine each of these grounds in turn.

Initially, the Court notes that defendants raised no complaints or challenges to the compensation requests submitted by the Court Monitor for over a year after his initial appointment. Defendants' first such complaint was filed on June 14, 2002, the same day that defendants filed their motion to revoke the Court Monitor's appointment. It hardly seems a wild surmise, then, that defendants' challenge to the Court Monitor's compensation request likely has more to do with furthering the objectives of defendants' motion to revoke the Court Monitor's appointment than with any dispute about a particular fee or expense item requested.

■ Defendants point to no authority for the assertion that they are entitled to comment upon or object to the Court Monitor's compensation requests *prior to* the Court's issuance of an order to pay. *Casey v. Lewis*, 43 F.3d 1261 (9th Cir.1994), which is cited by defendants, certainly stands for no such proposition. Instead, it contains only the following unremarkable dictum at the very end of the opinion: "In any event, it would be unfair to order Defendants to pay the fees without an opportunity to object." *Id.* at 1270. In fact, this Court has afforded defendants an opportunity to object to the Court Monitor's compensation requests—it has allowed for a response to the requests fol-

lowing payment, and it has established a method for adjustment of the amounts paid in the next compensation request filed by the Court Monitor. Defendants thus cannot be heard to complain that they have not been entitled to an opportunity to contest the Court Monitor's requests for compensation.

■ Next, defendants object to the reasonableness and propriety of the compensation requests, alleging that the requests do not provide sufficient details regarding the work performed by the Court Monitor. Defendants point to a dissenting opinion in *Texas v. New Mexico*, 475 U.S. 1004, 106 S.Ct. 1168, 89 L.Ed.2d 360 (1986), as support for their position. The complaint in that case, however, concerned a fee statement by a special master who had provided neither his hourly rate nor the experience levels of the attorneys for whose services he was charging. *Id.* Neither of these facts is, of course, present in the instant case. Nor does Justice Blackmun's paragraph-long opinion in *Kansas v. Colorado*, 498 U.S. 933, 934, 111 S.Ct. 335, 112 L.Ed.2d 301 (1990) do much to advance defendants' argument. That opinion merely asserts, in dicta, that a court should determine for itself the reasonableness and propriety of a special master's requests for compensation. As noted below, this Court has determined that the Court Monitor's requests are both reasonable and proper.

Defendants also quote from two opinions involving "analogous circumstances"— namely, awards of attorneys' fees to a prevailing party—in an attempt to justify their objections. The first of these two opinions happens to be a 1999 memorandum opinion from the instant case. This Court can only respond that the devil himself may quote scripture to his purpose. In any event, neither opinion applies in the instant case because they address the very

different situation in which a prevailing party submits a proposed fee bill to the court. Such a situation calls for scrutiny from an adverse party because of the opportunity for fraud by the party submitting the bill, who is not subject to scrutiny by the court. The opinions that defendants cite are inapposite here because the Court Monitor is not an adversarial party, and because both the Court Monitor's activities and his compensation requests are subject to monthly review by this Court. The Court Monitor's experience and expertise, documented upon his appointment and confirmed by his submission of eight Reports to this Court as well as several supplemental and special reports, gainsay any allegation that he has not conducted himself in a proper manner. The overall amount of each of the Court Monitor's compensation requests has been reasonable, and has represented a reasonable amount of time expended in performance of his duties. Moreover, the hourly rate at which the Court Monitor bills his time is far below the market rate for an attorney of his vast experience.

Defendants also overlook the fact that the Court's order appointing the Court Monitor, as well as the order extending his appointment, authorized him to "receive ex parte communication with all entities necessary or proper to effectuate his duties." *See* Orders dated April 16, 2001 and April 15, 2002. This Court has authorized the Court Monitor to hold in confidence the identity of such entities, as well as the substance of any statements made by their employees to him. It would be manifestly improper for the Court Monitor's compensation requests to violate such confidences by naming the persons with whom he has met or describing the nature of their conversations. It is sufficient that the Court Monitor has advised this Court regarding his meetings and discussions with third parties and has always informed this Court about the nature, extent, and substance of such meetings and discussions upon request. To provide defendants access to information about the Court Monitor's discussions regarding defendants' trust reform activities, including the names of persons with whom he conducts such discussions, would allow defendants to influence or control the information that the Court Monitor receives. Defendants understood this problem when they consented to the Orders appointing the Court Monitor and the extension of that appointment.

This Court has already addressed concerns about retaliation based on defendants' conduct toward their own employees who have made public statements or who have assisted this Court's investigating officials. That concern has again surfaced in the reasons that the Special Trustee provided for his resignation, including allegations that he was forced to resign by the Secretary of the Interior because of statements that he made to the Court or to Congress. This Court drafted the ex parte language in the orders appointing the Court Monitor and extending his appointment for the express purpose of preventing any renewed retaliatory action in conjunction with his monitoring activities. The Court Monitor was required to remain independent of any control by defendants or their surrogates so as not to impair his ability to conduct his investigation.

In order to provide defendants with the assurance that the Court Monitor's fees are reasonable and proper, this Court has performed an independent determination of the Court Monitor's compensation requests that have been called into question by defendants. The Court is satisfied that all four requests have been properly made. Defendants have presented no evidence to suggest that any individual fees or expenses requested by the Court Monitor are questionable in nature. Without such

evidence, this Court's determination will not be disturbed.

█ Finally, defendants claim that the Court Monitor's invoice includes fees and charges for activities that are not properly within the scope of his appointment order or within this Court's jurisdiction. Specifically, defendants contest all charges related to the issuance of formal discovery requests, to legal research, and to expenses for attending the InterTribal Monitoring Association meeting as beyond the scope of the Court Monitor's appointment order. The Court initially notes that it was defendants' concern that the Court Monitor's activities be governed by Rule 53 of the Federal Rules of Civil Procedure that led this Court to require "that to the extent the Court Monitor's findings of fact submitted to the Court are based upon witness statements, those statements should be developed from on-the-record testimony given under oath with an opportunity for cross-examination by the parties." *See* Order dated April 15, 2002. Defendants will not now be heard to argue that the issuance of discovery requests by the Court Monitor, which give effect to this very language, are beyond the scope of his appointment order. Additionally, the Court notes that the Court Monitor had been ordered to include in his reports "a summary of the defendants' trust reform progress and any other matter Mr. Kieffer deems pertinent to trust reform." *Id.* The performance of legal research is unquestionably within the scope of the Court Monitor's mandate, as is his attendance at a meeting of a consortium of American Indian tribes to discuss trust fund issues. However, defendants challenge this very mandate as beyond this Court's jurisdiction. On this subject, defendants would be mindful to recall the words of the D.C. Circuit in response to similar assertions:

> The level of oversight proposed by the district court may well be in excess of

that countenanced in the typical delay case, but so too is the magnitude of government malfeasance and potential prejudice to the plaintiffs' class. Given the history of destruction of documents and loss of information necessary to conduct an historical accounting, the failure of the government to act could place anything approaching an adequate accounting beyond plaintiffs' reach. This fact, combined with the longstanding inability or unwillingness of government officials to discharge their fiduciary obligations, excuse court oversight that might be excessive in an ordinary case.

*Cobell v. Norton,* 240 F.3d 1081 (D.C.Cir. 2001).

The four motions presently before the Court, which represent a continued campaign against an official of this Court, seem designed as part of a concerted effort to interfere with the Court's oversight function. It is certainly understandable that defendants might behave in this manner. The Court Monitor's reports, after all, have proved embarrassing to defendants, documenting as they do their many falsehoods and attempts to mislead this Court. But it is time for such behavior to end. For defendants to file their latest motion for adjustment only one week after this Court's contempt ruling simply demonstrates that defendants have no intention of ever reexamining their bunker mentality that their own Inspector General has criticized as destructive.

Having made a thorough review of the Court Monitor's compensation requests to which defendants have objected, this Court is satisfied that the compensation requests were properly submitted, and are unobjectionable. Accordingly, it is hereby

ORDERED that Interior Defendants' Motion for Reconsideration of the May 31, 2002 Order to Pay the Court Monitor the Sum of $54,307.34 [1340], Interior Defen-